UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

IN RE:

BRANDY C. SIMONDS  
      Debtor(s)

Case No. 14-49772-mbm  
Chapter 7  
Hon. McIvor

_____/

UNIVERSITY OF MICHIGAN
CREDIT UNION,
      Plaintiff,

v.

Adv. Case No.

BRANDY C. SIMONDS,
      Defendant.

_____/

BUTLER, BUTLER & ROWSE-OBERLE, P.L.L.C.
KAREN L. ROWSE-OBERLE (P41893)
Attorneys for Plaintiff
24525 Harper Avenue
St. Clair Shores, MI 48080
(586) 777-0770
krowse-oberle@butler-butler.com

_____/

## COMPLAINT TO DETERMINE DISCHARGEABILITY

NOW COMES Plaintiff, UNIVERSITY OF MICHIGAN CREDIT UNION, by and through its attorneys, BUTLER, BUTLER & ROWSE-OBERLE, P.L.L.C., for its Complaint to determine dischargeability, pursuant to FRBP 4007, 7001(6), 11 U.S.C. §523(a)(2)(A), 11 U.S.C. §523(a)(2)(B) and 11 U.S.C. §523(a)(6) states as follows:

1. On June 6, 2014, Defendant filed for relief pursuant to Chapter 7 of the Bankruptcy Code.

2. The Court has jurisdiction to determine the issues presented in this matter pursuant to 28 U.S.C. §157(a) and 28 U.S.C. §1334.

3. This is a core proceeding pursuant to 11 U.S.C. §157(b)(2)(I).

4. Plaintiff is the holder of a claim against the Defendant in the above captioned matter in the amount of $34,675.30.

## COUNT I - 11 U.S.C. §523(a)(2)(A)

5. Plaintiff incorporates the allegations contained in paragraphs One through Four as if fully set forth herein.

6. Defendant financed with Plaintiff the purchase of a 2012 BMW 6 Series, VIN WBALZ3C51CC397763 on or about May 10, 2013. (See EXHIBIT A)

7. Pursuant to the Retail Installment Contract and Security Agreement, Defendant agreed to remit payment to Plaintiff in the amount of $1,335.18 monthly for seventy two (72) months commencing June 24, 2013.

8. Defendant failed to remit the first payment in a timely fashion.

9. Defendant remitted the first payment on the account on or about August 6, 2013 at which time she was also due for the July 24, 2013 payment.

10. Defendant remitted the July 24, 2013 payment on or about August 28, 2013 at which time she was due for the August 24, 2013 payment.

11. On October 8, 2013, Defendant remitted the last payment that was made on the account.

12. On or about March 13, 2014, Plaintiff commenced a lawsuit in the Third Judicial Circuit Court for Wayne County bearing case number 14-003232-PD seeking possession of the vehicle securing the loan and a money judgment.

13. Defendant filed an Answer to the Complaint indicating that "[t]his vehicle was in my name for someone else and I wasn't responsible for making the payments".

14. The state court matter was stayed by the Defendant's Chapter 7 filed on June 6, 2014.

15. At the time of filing, the Defendant was due for a partial payment for September 2013 and all subsequent monthly payments.

16. On August 8, 2014 Defendant attended a FRBP Rule 2004 Examination pursuant to an Order entered July 17, 2014.

17. At the August 8, 2014 FRBP 2004 Examination, Defendant testified as follows:

    A.    She financed the vehicle for her acquaintance Kevin Johnson.

    B.    Kevin Johnson was going to make the payments on the vehicle and then refinance the vehicle into his business' name, Oscar Management.

    C.    She never intended to remit the payments required pursuant to the Retail Installment Contract and Security Agreement.

    D.    She did not purchase the vehicle for her own use.

    E.    She did not take possession of the vehicle.

18. Around the time Defendant entered into the Retail Installment Contract and Security Agreement with Plaintiff, Defendant also entered into another vehicle purchase agreement with PNC Bank for the purchase of a Ford Econoline Van.

19. On August 8, 2014, Defendant testified at the FRBP 2004 Examination that:

    A.    She financed the Ford Econoline Van at the same dealership she purchased the 2012 BMW 6 Series.

    B.    She used the same salesman to purchase the Ford Econoline Van and the 2012 BMW 6 Series.

    C.    She financed the Ford Econoline Van for Kevin Johnson.

    D.    She never took possession of the Ford Econoline Van.

    E.    She did not intend to make payments on the Ford Econoline Van.

20. Defendant obtained the subject loan to purchase the Vehicle under false

pretenses, false representations and actual fraud.

21. Defendant's scheme caused the Plaintiff a loss of $34,675.30.

22. The Retail Installment Contract provides for reasonable costs and attorney fees incurred in collecting the debt.

23. Such actions by the Defendant constitute fraud as set for in 11 U.S.C. §523(a)(2)(A).

WHEREFORE, Plaintiff requests this Court enter Judgment in favor of the Plaintiff and against the Defendant excepting the obligation owing Plaintiff in the amount of $34,834.47, plus interest and costs, from discharge pursuant to 11 U.S.C. §523(a)(2)(A), award reasonable attorney fees to Plaintiff and award such other and further relief as the Court deems reasonable.

## COUNT II - 11 U.S.C. §523(a)(2)(B)

24. Plaintiff reincorporates the allegations contained in paragraphs One thought Twenty-three as if fully set forth herein.

25. On or about May 10, 2013, Defendant made an application for credit with Plaintiff for the purchase of the Vehicle. (See EXHIBIT B)

26. The Application was materially false at the time it was presented to the Plaintiff as the Defendant significantly overstated her income.

27. The Defendant stated on the Dealer Credit Application that she earned $7,500.00 a month at Ryder. (See EXHIBIT B).

28. When the Debtor filed her bankruptcy she listed her total wages for 2013 as $10,564.00 and unemployment income in the amount of $4,811.00. (See EXHIBIT C)

29. Based upon Defendant's testimony at the FRBP 2004 Examination, Defendant was never employed by Ryder and never made $7,500.00 per month.

30. Plaintiff reasonably relied upon the representations made on the Application.

31. Defendant intended to deceive Plaintiff when she presented the false Application to Plaintiff.

32. Plaintiff suffered a loss of $34,675.30 as the result of Defendant's materially false representations.

33. The Retail Installment Contract provides for reasonable costs and attorney fees incurred in collecting the det.

34. Such actions by the Defendant constitute fraud as set forth in 11 U.S.C. §523(a)(2)(B).

WHEREFORE, Plaintiff requests this Court enter Judgment in favor of the Plaintiff and against Defendant excepting the obligation owing Plaintiff in the amount of $34, 675.30, plus interest and costs, from discharge pursuant to 11 U.S.C. §523(a)(2)(B), award reasonable attorney fees to the Plaintiff and award such other and further relief as the Court deems reasonable.

## COUNT III - 11 U.S.C. §523(a)(6)

35. Plaintiff reincorporates the allegations contained in paragraphs One through Thirty-four as if fully set forth herein.

36. Upon application by Defendant, Plaintiff approved a Retail Installment Contract dated May 10, 2013, in the principal amount of $83,371.70.

37. Plaintiff had a perfected security interest in the Vehicle.

38. The Purchase Agreement required that the Defendant remit monthly payments to the Plaintiff in the amount of $1,335.18 for 72 months.

39. A total of three payments were made on Defendant's account.

40. Based upon Defendant's testimony at a FRBP 2004 Examination, Defendant did not make the payments on the account, nor did she intend on making the payments on the account.

41. Based upon Defendant's testimony at a FRBP 2004 Examination, Defendant

never took possession of the Vehicle; rather, Kevin Johnson took possession of the vehicle at Taylor Chevrolet.

42. Based upon Defendant's testimony at a FRBP 2004 Examination, Defendant never intended to take possession of the vehicle.

43. Around the same time Defendant entered into the Retail Installment Contract and Security Agreement with Plaintiff, Defendant also entered into another vehicle purchase agreement with PNC Bank at the same dealership for the purchase of a Ford Econoline Van for Kevin Johnson.

44. Defendant did not take possession of the Ford Econoline Van nor did she intend on making payments on the Ford Econline Van.

45. Defendant gave an $83,371.70 vehicle to an acquaintance who verbally agreed to perform the Defendant's duties pursuant to the Purchase Agreement.

46. Defendant intended to willfully and maliciously injure Plaintiff when she

    A. Financed a vehicle for which she never intended to make payments.

    B. Financed a vehicle financed through Plaintiff for an acquaintance without regard for the obligation she incurred or the affect her failure/refusal to remit payments would have on Plaintiff.

47. There remains $34,675.30 due and owing on the contract exclusive of costs, interest and attorney fees.

48. The contract between Defendant and Plaintiff contains a provision for the award of reasonable attorney fees for collection and default issues.

49. Such intention to injure and the loss of the vehicle is cause to exclude this debt from discharge pursuant to 11 U.S.C. §523(a)(6).

WHERFORE, Plaintiff request this Court enter Judgment in favor of the Plaintiff and against Defendant excepting the obligation owing Plaintiff in the amount of $34, 675.30 plus interest

and costs, from discharge pursuant to 11 U.S.C. §523(a)(6), award reasonable attorney fees to Plaintiff and award such other and further relief as the Court deems reasonable.

September 15, 2014    BUTLER, BUTLER & ROWSE-OBERLE, P.L.L.C.


/S/Karen L. Rowse-Oberle
KAREN L. ROWSE-OBERLE (P41893)
24525 Harper Avenue
St. Clair Shores, MI 48080
(586) 777-0770
Krowse-oberle@butler-butler.com

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| BRANDY CHANEL SIMONDS | | TAYLOR CHEVROLET, 13801 TELEGRAPH RD. TAYLOR MI 48180 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2012 | BMW 6 SERIES | 17568 | WBALZ3C51CC397763 | ☒ Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $3000.00 |
|---|---|---|---|---|
| 4.74 % | $12761.26 | $83371.70 | $96132.96 | $99132.96 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 1335.18 | Monthly beginning 06/24/2013 |

Or As Follows:

Late Charge. If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __15__ or __5__ % of the part of the payment that is late, whichever is __greater__.

Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See the contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED
1. Cash Price
   A. Taxable Part of Cash Price
      i. Vehicle ... $77495.00
      ii. Accessories and Installation Charges ... N/A
      iii. Document Preparation Fee ... $200.00
      iv. N/A ... N/A
      v. N/A ... N/A
      vi. N/A ... N/A
      Total Taxable Part of Cash Price ... $77695.00
   B. Sales Tax ... $4661.70
   C. Non-Taxable Part of Cash Price
      SERVICE CONTRACT ... $3000.00
      N/A ... N/A
      N/A ... N/A
      N/A ... N/A
      Total Non-Taxable Part of Cash Price ... $3000.00
   Total Cash Price ... $85356.70 (1)
2. Total Downpayment =
   Trade-in N/A (Year) (Make) (Model)
   Gross Trade-In Allowance ... N/A
   Less Pay Off Made By Seller ... N/A
   Equals Net Trade In ... N/A
   + Cash ... $3000.00
   + Other N/A ... N/A
   (If total downpayment is negative, enter "0" and see 4I below) ... $3000.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ... $82356.70 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf (Seller may receive part of these amounts to the extent permitted by law.):
   A. Cost of Optional Credit Insurance Paid to Insurance Company or Companies
      Life ... N/A
      Disability ... N/A ... N/A
   B. Other Optional Insurance Paid to Insurance Company or Companies ... N/A
   C. Optional Gap Contract ... $685.00
   D. Official Fees Paid to Government Agencies ... N/A
   E. Government Taxes Not Included in Cash Price ... N/A
   F. Government License Fees and/or Registration Fees LICENSE FEES ... $315.00
   G. Government Certificate of Title Fees ... $15.00
   H. Prior Credit or Lease Balance Paid to N/A ... N/A
   I. Other Charges (Seller must identify who is paid and describe purpose.)
      to N/A ... N/A (multiple lines all N/A)
   Total Other Charges and Amounts Paid to Others on Your Behalf ... $1015.00 (4)
5. Amount Financed - Principal Balance (3 + 4) ... $83371.70 (5)
6. Finance Charge ... $12761.26 (6)
7. Total of Payments -Total Balance ... $96132.96 (7)

Payment Schedule: The payment schedule will be 72 installments of $1335.18 each, monthly beginning 06/24/2013, or if scheduled payments are irregular or unknown, as follows: _____

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS ____

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

### Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ N/A Term N/A
Credit Disability $ N/A Term N/A
Insurance Company Name N/A
Home Office Address N/A

### Other Optional Insurance
☐ N/A ... N/A Term
Type of Insurance
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

### OPTIONAL GAP CONTRACT
A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 72 Mos. Name of Gap Contract: PARTNERS ALLIAN
I want to buy a gap contract.
Buyer Signs X _____

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X ____ Co-Buyer Signs N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**Warning:** The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others, unless so indicated hereon.

**Notice To Buyer:** Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.

Buyer Signs X ____ Date 05/18/13 Co-Buyer Signs N/A Date N/A

Seller signs _____ Date 05/18/13 By X _____ Title AGENT

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X ____ Date 05/18/13 Co-Buyer Signs N/A Date N/A

Seller assigns its interest in this contract to UNIVERSITY OF MICHIGAN CU (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse
TAYLOR CHEVROLET, INC.
Seller ____ By ____ Title AGENT ORIGINAL LIENHOLDER

**IMPORTANT AGREEMENTS**

### CHARGE AND PAYMENTS

**a.** We will figure Finance Charge. We will figure Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

We will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed to other amounts you owe under this contract in order we choose.

Late payments or early payments change what you must pay. We based the Finance Charge, Total Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. If all your scheduled payments are equal, we will give you at least 25 days after the final scheduled payment is due to pay any extra amount you owe because you paid late. We will send you a notice telling you about these changes before the final scheduled payment is due.

You may prepay. You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

Your right to refinance a balloon payment. A balloon payment is a scheduled payment that is larger than any of the substantially equal prior scheduled payments. If your final scheduled payment is a balloon payment, you have the right to enter into a new written agreement when it is due (refinance). You may refinance the balloon in equal installments over a reasonable period of time. During this period, you will also pay a finance charge on the unpaid balance computed using the Annual Percentage Rate on the front.

### OTHER PROMISES TO US

If the vehicle is damaged, destroyed, or missing, you agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

**Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may buy insurance that covers your interest and our interest in the vehicle, or, if such coverage cannot be obtained, buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which one and the charge you must pay. If you fail to pay us, and if permitted by law, we may add the charge to the balance owing under this contract. We may increase the amount of your scheduled payment in order to amortize the charge by the time your final payment is due. As an alternative and, if you specifically agree, you may have a larger or balloon final payment, or the date of the final payment may be extended. The charge will be the cost of the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

What happens to returned insurance, maintenance, service, or other contract charges. If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

---

### IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b.** You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.** You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows.

**d.** We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your car has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e.** How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle or earlier, if we notify you of an earlier date.

**f.** We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g.** What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

---

**4. WARRANTIES SELLER DISCLAIMS**

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**6. Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. Applicable Law**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

### ARBITRATION CLAUSE
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Arbitration shall be conducted by the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable. Notwithstanding any other provision of this Arbitration Clause, the validity and scope of the waiver of class action rights shall be decided by the court and not by the arbitrator.

**PLEASE PRINT - INCOMPLETE APPLICATIONS WILL NOT BE PROCESSED.**

INSTRUCTIONS:
You may apply for credit in your name alone, whether or not you are married.
(1) Please indicate whether you are applying for [X] Individual Credit  [ ] Joint Credit  [ ] Community Property State  [ ] Business Application
(2) [X] If you are applying for individual credit in your name and relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete only Section A.

(3) [ ] If you are applying for joint credit with another person, complete sections A and B.
We intend to apply for joint credit.

_____     _____
Applicant                                    Co-Applicant

* If you are married and live in a community property state, please complete Section A about yourself and Section B about your spouse. You must sign this application. Your spouse must sign this application only if s/he wishes to be a Co-Applicant.

| Last Name | First Name | Middle Initial | Social Security Number | Birth Date |
|---|---|---|---|---|
| SIMONDS | BRANDY | | | |

| Address | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|
| | | | | | MI | |

| Home Phone * | Cell Phone * | Residential Status | Time at Address | Rent/Mtg. Pmt. $ |
|---|---|---|---|---|
| | | [ ] Homeowner [X] Rent [ ] Family [ ] Other | 4 Yrs. 6 Mos. | 350.00 |

| E-Mail Address | Driver's License No. | Driver's License State | Time at Previous Address |
|---|---|---|---|
| | | | ___ Yrs. ___ Mos. |

| Previous Full Address (if less than 2 years) | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|

| Employer Name | Employment Type |
|---|---|
| | [X] Employed [ ] Unemployed [ ] Self-employed [ ] Military [ ] Retired [ ] Student [ ] Other |

| Salary | Salary Type | Occupation | Length of Employment | Work Phone Number * |
|---|---|---|---|---|
| | [ ] Weekly [ ] Bi-Weekly [X] Monthly [ ] Annually | | 5 Yrs. 2 Mos. | |

| Previous Employer Name | Previous Employment Type |
|---|---|
| | [ ] Employed [ ] Unemployed [ ] Self-employed [ ] Military [ ] Retired [ ] Student [ ] Other |

| Previous Occupation | Length of Employment | Previous Work Phone Number |
|---|---|---|
| | Yrs. Mos. | |

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this obligation.

| Other Income (Monthly) | Source of Other Income |
|---|---|

| Last Name | First Name | Middle Initial | Social Security Number | Birth Date | Relationship |
|---|---|---|---|---|---|

| Address | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|

| Home Phone * | Cell Phone * | Residential Status | How Long | Rent/Mtg. Pmt. $ |
|---|---|---|---|---|
| | | [ ] Homeowner [ ] Rent [ ] Family [ ] Other | ___ Yrs. ___ Mos. | |

| E-Mail Address | Driver's License No. | Driver's License State | Time at Previous Address |
|---|---|---|---|
| | | | ___ Yrs. ___ Mos. |

| Previous Full Address (if less than 2 years) | Apt # / Suite # | P.O. Box | Rural Route | City | State | Zip |
|---|---|---|---|---|---|---|

| Employer Name | Employment Type |
|---|---|
| | [ ] Employed [ ] Unemployed [ ] Self-employed [ ] Military [ ] Retired [ ] Student [ ] Other |

| Salary | Salary Type | Occupation | Length of Employment | Work Phone Number * |
|---|---|---|---|---|
| | [ ] Weekly [ ] Bi-Weekly [ ] Monthly [ ] Annually | | Yrs. Mos. | |

| Previous Employer Name | Previous Employment Type |
|---|---|
| | [ ] Employed [ ] Unemployed [ ] Self-employed [ ] Military [ ] Retired [ ] Student [ ] Other |

| Previous Occupation | Length of Employment | Previous Work Phone Number |
|---|---|---|
| | Yrs. Mos. | |

Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered as a basis for repaying this obligation.

| Other Income (Monthly) | Source of Other Income |
|---|---|

Comments

* You agree that if an account is created for you, all of the following also apply: (a) we may monitor and record telephone calls regarding your account to assure the quality of our service or for other reasons; (b) you expressly consent to us using prerecorded/artificial voice messages, text messages and/or automatic dialing equipment while servicing or collecting your account, as the law allows; (c) you agree that we may take these actions using the telephone number(s) that you provide us in this credit application, you provide to us in the future, or we get from another source, even if the number is for a mobile or cellular telephone and/or our using the number results in charges to you.



## FEDERAL NOTICES

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT If applicable to your credit transaction, to help the government fight the funding of terrorism and money laundering activities, Federal law requires financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, you will be asked for your name, address, date of birth, and other information to identify you. You may also be asked to see your driver's license or other identifying documents.

## STATE NOTICES

**California Residents:** An applicant, if married, may apply for a separate account.

**Maine Residents:** You must have physical damage insurance covering loss or damage to the vehicle for the term of the contract. For a lease, you must also have the liability insurance as described in the lease. You may purchase required insurance through any insurance agent or broker and from any insurance company that is reasonably acceptable to us. You are not required to deal with any of our affiliates when choosing an agent, broker or insurer. Your choice of a particular insurance agent, broker or insurer will not affect our credit decision, so long as the insurance provides adequate coverage with an insurer who meets our reasonable requirements.

**New Hampshire Residents:** If you are applying for a balloon payment contract, you are entitled, if you ask, to receive a written estimate of the monthly payment amount for refinancing the balloon payment in accord with the creditor's existing refinance programs. You would be entitled to receive the estimate before you enter into a balloon payment contract. A balloon contract is an installment sales contract with a final scheduled payment that is at least twice the amount of one of the earlier scheduled equal periodic installment payments.

**New York Residents:** In connection with your application for credit, a consumer report may be obtained from a consumer reporting agency (credit bureau). If credit is extended, the party or parties extending credit or holding such credit may order additional consumer reports in connection with any update, renewal or extension of the credit. If you ask, you will be told whether a consumer report was requested and, if so, the name and address of any consumer reporting agency (credit bureau) from which such credit report was obtained.

**Ohio Residents:** Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**Rhode Island Residents:** Consumer reports may be requested in connection with this application. Buyer has the right of free choice in selecting an insurer to provide insurance required in connection with this transaction subject to our reasonable approval in accordance with applicable law.

**Vermont Residents:** You authorize us and any financial institution with which this credit application is shared, and each of their respective employees or agents, to obtain and verify information about you (including one or more credit reports, information about your employment and banking and credit relationships) that they may deem necessary or appropriate in evaluating your credit application. If your credit application is approved and credit is granted, you also authorize the parties granting credit or holding your account, and their respective employees and agents, to obtain additional credit reports and other information about you in connection with reviewing the account, increasing the available credit on the account (if applicable), taking collection on the account, or for any other legitimate purpose.

**Married Wisconsin Residents:** No provision of any marital property agreement, any unilateral statement under Wis. Stat § 766.59 or any court decree under § 766.70 applied to marital property adversely affects our interest unless you furnish a copy of the agreement, statement, or court decree or we have actual knowledge of such adverse provision before credit is granted. If you are making this credit application individually and not jointly with your spouse, complete Section A about yourself and Section B about your non-applicant spouse. Your non-applicant spouse should not sign the credit application if you are applying for individual credit.

This application may be submitted to the following financial institutions [Name(s) and Address(es)]

X _____  _____  X _____  _____
APPLICANT'S SIGNATURE          DATE       CO-APPLICANT'S SIGNATURE     DATE

COPYRIGHT (C) 2012 DEALERTRACK, INC. ALL RIGHTS RESERVED.
Page 3 of 3    DT1 08/12    Printed on

# United States Bankruptcy Court
## Eastern District of Michigan

In re   **Brandy C Simonds**                                                               Case No.       

                                                                                                       Debtor(s)                      Chapter   **7**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. To indicate payments, transfers and the like to minor children, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any persons in control of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(2), (31).

---

**1. Income from employment or operation of business**

None     State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's
☐          business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$10,676.71** | **Wages, approx. as of 5/30/2014** |
| **$10,564.00** | **Wages, approx. for 2013** |
| **$28,202.00** | **Wages, approx. for 2012** |

---

**2. Income other than from employment or operation of business**

None     State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business
☐          during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$4,811.00** | **Unemployment, approx. for 2013** |

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com                                                         Best Case Bankruptcy

14-49772-mbm    Doc 1    Filed 06/06/14    Entered 06/06/14 16:49:42    Page 27 of 43
14-04986-mbm    Doc 1    Filed 09/15/14    Entered 09/15/14 16:52:21    Page 12 of 12

Exhibit-C